Dennis NAUSLAR and Nauslar Investments, L.L.C., Appellant

v.

COORS BREWING CO. and Golden Distributing Enterprises, L.P., Appellees.

No. 05–04–00704–CV.

Court of Appeals of Texas, Dallas.

Aug. 19, 2005.

Martin J. Siegel, Houston, TX, for Appellant.

Jon P. Christiansen, Michael J. Aprahamian, Foley & Lardner LLP, Milwaukee, WI, Monica Wiseman Latin, J. Michael Hughes, Rodney H. Lawson and John Franklin Guild, Carrington, Coleman, Sloman & Blumenthal, L.L.P., David Bryant, Diamond, McCarthy, Taylor, Finley, Bryant & Lee, Sean Joseph McCaffity, Dallas, TX, for Appellee.

Before Justices BRIDGES, O'NEILL, and MAZZANT.

## OPINION

Opinion by Justice O'NEILL.

The trial court granted the Defendants' pleas to the jurisdiction for lack of stand-

ing on all of the Plaintiffs' claims and dismissed the case. We conclude that (1) Plaintiff–Appellants lack standing on the statutory and common-law causes of action brought on their own behalf. Concerning the causes of action asserted "on behalf of" the business entity that they sold, they affirmatively negate having capacity to bring those claims. Accordingly, we affirm the trial court's dismissal of all of Plaintiffs' claims. We reverse the trial court's order denying Coors attorneys' fees and remand that issue.

## Facts

The crux of this dispute is the disapproval by Coors Brewing Co. ("Coors") of a proposed consolidation in 2001 between Willow Distributors, L.P. ("Willow"), an entity distributing Coors beer in the Dallas area, and the distributor of Miller beer, Miller of Dallas ("Miller"). Plaintiffs alleged that Willow and Miller had agreed to a joint venture that would be operated by a new entity, United LP. Willow and Miller would each own 50% of the new entity, and the cash flow from the new business would be shared equally. In addition, Nauslar asserts the new enterprise would employ him as a company manager.

At the time of the proposed consolidation (the "Consolidation"), neither of the Plaintiffs was party to the distributorship agreement with Coors. Rather, Willow was the contracting party and the named distributor under the distributor agreement with Coors. Plaintiff Dennis Nauslar, individually, did not have a direct ownership interest in Willow, and Plaintiff Nauslar Investments was the limited partner in Willow. The structure underpinning Willow is as follows: Willow's general partner was DEN L.P. and its limited partner was Nauslar Investments LLC. Nauslar, individually, was 100% owner of Nauslar Investments, which in turn was

the limited partner in DEN L.P (general partner in Willow).

When, in September 2001, Nauslar presented the proposed Consolidation to Coors for its approval, Coors rejected the deal. Instead, Coors invoked its right under the distributorship agreement to negotiate exclusively to buy Willow. It assigned that exclusive right to Golden Distributing Enterprises, L.P. (Golden). Over the next year, according to Plaintiffs, it became clear that Golden could not feasibly consolidate with or purchase Willow. Subsequently, Nauslar approached Miller again, but this time Miller was interested in only an outright purchase of Willow. Coors approved an outright sale to Miller. Coors, relying on a clause in the distributorship agreement, required Nauslar to sign a "mutual release" on behalf of Willow. Under that agreement, both Willow and Coors released any and all claims each had against the other and also warranted that neither party had assigned any such claims to a third party. Nauslar signed the release, and Miller bought Willow and DEN L.P. from Nauslar and Nausar Investments for $57.8 million.

Nauslar and Nauslar Investments sued Coors, alleging it unreasonably disapproved the proposed Consolidation with Miller, in violation of the Texas Beer Industry Fair Dealing Law. They also brought a number of common-law claims against Coors and Golden, including one for tortious interference with the Consolidation. After two hearings, the trial court granted Coors's and Golden's pleas to the jurisdiction and dismissed all of the Plaintiffs' causes of action for lack of standing. Plaintiffs brought this appeal, challenging the trial courts' dismissal of their statutory and common-law causes of action.

**Summary**

Plaintiffs seek to bring their claims in their own right, as individual claims brought on their own behalf. They also assert—as former partners and owners of Willow—claims "on behalf of" Willow, for alleged injuries to Willow itself, but with recovery going to Plaintiffs, not Willow. First, we address the individual claims and conclude that Plaintiffs lack standing to bring either the common-law or statutory causes of action in their own right. We address next the claims brought "on behalf of" Willow, i.e., the Willow partnership's claims. We conclude that Plaintiffs, in their live pleading, affirmatively negate that they have capacity to bring claims on behalf of Willow. Having rejected their other theory by which to allege capacity, we affirm dismissal of the claims asserted on behalf of Willow. We conclude that an award of attorney's fees under the statute is mandatory if one party prevails in an action under that statute, and thus we reverse the trial court's order denying Coors its attorney's fees and remand that issue.

## I. Common–Law Causes of Action Asserted as Individual Right of Action

We address whether the Plaintiffs have standing, in their own right, to bring and personally recover on the common-law causes of action[1] they assert against Defendants. We note first the injury asserted. Plaintiffs allege that Willow was weakened by Coors's efforts to force a deal with Golden, and that Willow's value declined between the time of the disapproval in 2001 and the subsequent sale to Miller in 2003. Specifically, Plaintiffs assert damages as follows: Nauslar, individually, seeks redress for (1) the distributions, profits and other benefits of ownership he would have reaped as the *sole owner* of Willow and other corporate entities, had Coors approved the Consolidation; and (2) loss of salary, bonuses and other employment compensation he would have been paid by United (the operating entity to be formed upon Consolidation) as well as employment-related losses as an *employee* of Willow. Nauslar Investments, Inc. asserts that, as the *former general partner* of DEN LP (the general partner of Willow) and as the *former limited partner* of Willow, it was "injured to the same degree as—and could assert all claims of DEN LP and Willow."

In sum, Nauslar seeks damages for loss of the benefits of ownership and employment-related losses. Nauslar Investments, as former general partner of the general partner of Willow, seeks damages that mirror those suffered by Willow.

## A. Standard of Review and Principles Governing Standing

▉ Because the question of standing is a legal question, we review de novo a trial court's ruling on a plea to the jurisdiction. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998). Standing is a component of a court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). The plaintiff has the burden of alleging facts that affirmatively demonstrate a court's jurisdiction to hear a cause. *Id.* A plea to the jurisdiction challenges a trial court's authority to hear a case by alleging that the factual allegations

---

1. Plaintiffs sued Coors for breach of contract and sued both Coors and Golden for conspiracy to terminate the Consolidation, negligence per se, and tortious interference. Nauslar also asserted that he, individually, was a third-party beneficiary to the Consolidation agreement. We refer to these causes of action collectively as Plaintiffs' common-law actions.

in the plaintiff's pleadings, when taken as true, fail to invoke the trial court's jurisdiction. *El Paso Cmty. Partners v. B & G/Sunrise Joint Venture*, 24 S.W.3d 620, 623 (Tex.App.-Austin 2000, no pet.) (citing *Bybee v. Fireman's Fund Ins. Co.*, 160 Tex. 429, 331 S.W.2d 910, 917 (1960)). We construe the allegations in the pleadings in favor of the pleader. *Tex. Air Control Bd.*, 852 S.W.2d at 446.

▪ When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.*

▪ A person has standing to sue when he is personally aggrieved by the alleged wrong. *Nootsie Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996). A person has standing if (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter, as well as his own. *Precision Sheet Metal Mfg. Co., Inc. v. Yates*, 794 S.W.2d 545, 552 (Tex.App.-Dallas 1990, writ denied).

▪ Without a breach of a legal right belonging to a plaintiff, that plaintiff

has no standing to litigate. *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex.App.-Tyler 2002, pet. denied); *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 669–70 (Tex.App.-Fort Worth 2001, pet. denied); *Brunson v. Woolsey*, 63 S.W.3d 583, 587 (Tex.App.-Fort Worth 2001, no pet.). Only the person whose primary legal right has been breached may seek redress for an injury. *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex.1976) (defrauded party only can bring suit to set aside deed obtained by fraud). "Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit." *Id.*

**B. Legal Principles: Whose Primary Legal Right Was Allegedly Infringed?**

Plaintiffs' principle argument is that the issue raised concerns who owns the claims, and thus presents a question of capacity, not standing. They rely on *Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988) (a challenge to a shareholder's right to bring a cause of action for wrongs done to the corporation raises a question of capacity). They also rely on *Prostok v. Browning*, 112 S.W.3d 876, 921 (Tex.App.-Dallas 2003) ("A challenge to who owns a claim raises the issue of capacity, not standing."), *aff'd*, 165 S.W.3d 336 (Tex. 2005). We disagree that the pleadings raise only an issue of capacity, not standing. The case law reveals that, with respect to Plaintiffs' individual common-law causes of action, a fundamental question is raised: Do these claims embody a primary legal right belonging to the Plaintiffs or does the Willow partnership have the primary right of action? That raises an issue of standing.

We note initially that *Pledger* cannot stand for the simplistic proposition that a challenge to a stakeholder's bringing a suit to recover personally for corporate wrongs

raises an issue of capacity only. The *Pledger* court did not, indeed could not, discuss standing because that issue was not before it. 762 S.W.2d at 145–46. The case was decided before the determination that standing is an component of subject-matter jurisdiction and thus can be raised first on appeal. *See Tex. Air Control Bd.*, 852 S.W.2d at 446.

■ An individual stakeholder in a legal entity does not have a right to recover personally for harms done to the legal entity. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex.1990). In *Wingate*, one corporate shareholder sued another alleging he had appropriated corporate assets. The court ruled that individual stockholders have no separate, independent right of action for injuries suffered by the corporation, when the injures merely result in depreciation of the value of plaintiffs' stock. *Id.* at 719.

In *Fredericksburg Indus., Inc. v. Franklin Int'l, Inc.*, 911 S.W.2d 518, 520 (Tex. App.-San Antonio 1995, writ denied), the president/employee of a furniture manufacturing corporation sued a corporate supplier, asserting he lost wages as a result of the supplier's delivering defective glue. The court held he lacked standing: the cause of action belonged to the corporation alone, as the damages were to the corporation's profits, and any claim the plaintiff had for lost wages was against the corporation. *Id.* at 521.

■ Other cases in the corporate context reaffirm that where damage is to the business entity's worth, the individual stakeholder cannot personally recover, whether the damages sought are in terms of diminished value of an ownership interest or loss of employee benefits. In *Mendenhall v. Fleming Co., Inc.*, 504 F.2d 879 (5th Cir.1974), the plaintiffs sought to recover personally for damages from antitrust violations arising from the operation of retail stores by a corporation, which they had created. *Id.* at 880. The court noted that the business allegedly interfered with was that operated by the corporation and the damages sought were direct damage to corporate worth. Thus, the plaintiffs lacked standing. *Id.* at 880–81. The right of recovery was the entity's right alone, even though in an economic sense the impact "may bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership." *Id.* at 881 (quoting *Martens v. Barrett*, 245 F.2d 844, 846 (5th Cir.1957)).

■ A partner has no individual, separate cause of action for losses suffered by reason of tortious interference with a contract between the partnership and a third party: damages for loss in value of the partnership interest or employment losses are subsumed in the partnership's causes of action. *Cates v. Int'l Tel. & Tel. Corp.*, 756 F.2d 1161 (5th Cir.1985) (construing Texas law).

**C. Application and Conclusion**

■ Nauslar generally argues that he has standing, because he was "personally aggrieved" by, and suffered "direct injury" from, Defendants' actions in disapproving the Consolidation. He seeks to recover for loss of benefits of ownership and employment. Nauslar Investments asserts it has standing to sue, individually, for harms done to the partnership and seeks damages mirroring those Willow could recover.

As the case law demonstrates, Plaintiffs do not have a separate, individual right of action for injuries to the partnership that diminished the value of their ownership interest in that entity. *Wingate*, 795 S.W.2d at 719. Willow is the one who suffered the direct injury from the alleged

harm to the partnership's worth, and any loss to Plaintiffs in the sale price is "both indirect to and duplicative of" the entity's right of action. *Mendenhall,* 504 F.2d at 881. The right of recovery is Willow's right alone, even though the economic impact of the alleged wrongdoing may bring about reduced earnings, salary or bonus. *Fredericksburg,* 911 S.W.2d at 520; *Cates,* 756 F.2d at 1181; *Mendenhall,* 504 F.2d at 881.

We note the applicability of the facts in *Cates* to the instant case. 756 F.2d 1161. The *Cates* plaintiff, a minority partner, attempted to bring individual claims for tortious interference with the partnership's business, as do the Plaintiffs here. The damages sought were similar as well. The court's holding warrants quotation:

> Accordingly, any claims for damages which [plaintiff] suffered by reason of diminution in value of his partnership interest, or his share of partnership income, or his salary or bonus from the partnerships or their businesses, by reason of breach of such agreements, or tortious interference with such businesses, or anticompetitive conduct interfering with or limiting or "taking over" such businesses or their activities, *are in effect subsumed within the causes of action of the partnerships and do not afford [plaintiff] ... a separate, individual cause of action.*

*Id.* at 1181.

Accordingly, Willow possesses the primary legal right that was allegedly violated, and thus Willow is the exclusive party with a justiciable interest in redressing those alleged injuries. Accordingly, Plaintiffs do not have a standing to pursue and recover personally on the asserted common-law causes of action.

Plaintiffs' arguments to the contrary do not alter our conclusion. Concerning the tortious-interference cause of action, Naus-

lar argues that he has individual standing to pursue the claim under *Sturges v. Wal-Mart Stores, Inc.,* 39 S.W.3d 608 (Tex. App.-Beaumont 1998), *rev'd on other grounds,* 52 S.W.3d 711 (Tex.2001). In that case, individuals were deemed to have standing where a proposed business entity was never formed due to the defendant's interference. The appellate court held that the individual plaintiffs, who had signed the letter of intent, were all "interested parties who would have profited from the prospective lease," who were directly involved in the building of the proposed structure, and who sustained "direct economic injury" as a result of Wal-Mart's interference. *Id.* at 614-15.

*Sturges* is inapposite. The proposed entity in *Sturges* was never formed, leaving the principals in that enterprise as the directly injured parties. In today's case, the direct injury from Defendants' alleged wrongdoing was to Willow, the operating business entity that would have consolidated with Miller.

Plaintiffs also rely on *Abraham Inv. Co. v. Payne Ranch, Inc.,* 968 S.W.2d 518 (Tex.App.-Amarillo 1998, pet. denied) to overcome the obstacle that they were not party to the proposed consolidation agreement between Willow and Miller. In that case, plaintiff Abraham had a contract to purchase a ranch from defendant Payne. That contract was subject to a pre-existing preferential right of purchase contained in a contract between Payne and Campbell, which Campbell exercised to purchase the ranch. Defendants asserted Abraham lacked standing to sue for tortious interference, as he was not party to the Payne-Campbell contract. The court disagreed: whether Abraham was entitled to fulfillment of the direct contract to purchase with Payne turned on whether the third-party contract was properly exercised. *Id.* at 523-34.

*Abraham* is inapposite, as the analogy fails at the outset. The plaintiff had a direct contract with the defendant. Disposition under that contract turned on whether the third-party contract was properly exercised. In today's case, there is no direct contract between Plaintiffs and Defendants Coors and Golden. Accordingly, Plaintiffs lack standing to pursue their tortious-interference cause of action against Defendants.

Nauslar Investments asserts standing in its roles as *former* general partner of Willow's general partner and *former* limited partner of Willow. To overcome the obstacle that it is not a general partner of Willow, it relies on the double derivative rule governing corporate derivative suits. To overcome the general rule that a partner cannot sue individually on a partnership claim, it relies on cases applying an exception to that rule. Those cases do not apply because, as discussed below, Nauslar Investments sold to Miller the entirety of its interest in Willow.[2] None of the cases it cites stands for the proposition that a partner that has sold its entire interest in the partnership can personally recover on a claim belonging to that partnership. The *Mendenhall* court, discussing the sale of corporate stock, captured the effect of the Plaintiffs' sale of the partnership:

> When [plaintiffs] sold their corporate stock to a third party, *they sold their right to control the very cause of action they now attempt to assert.* This suit cannot reclaim that corporate cause of

action by asserting the same damage sustained by the corporation also served to diminish the value of their individually held estates.

*Mendenhall,* 504 F.2d at 881.

## II. Plaintiffs' Statutory Causes of Action Asserted in Their Right

Plaintiffs assert that Coors unreasonably disapproved the Consolidation in violation of the Texas Beer Industry Fair Dealing Law (BIFDL), which prohibits manufacturers from withholding approval of the transfer of distributorship rights if the substituting party meets "reasonable standards." Tex. Alco. Bev.Code Ann. § 102.71, -.76, -.77, -.79 (Vernon 1995). We examine whether Plaintiffs have standing, in their own right, to bring a claim for the alleged violation of BIFDL.[3]

### A. Legal Principles Governing Standing Based on Statute

Standing to sue can be predicated upon either statutory or common-law authority. *See Williams v. Lara,* 52 S.W.3d 171, 178–79 (Tex.2001). The general rules of standing apply unless statutory authority for standing exists. *Id.* at 178. If standing is statutorily conferred, the statute granting authority and the case law interpreting it serve as the proper framework of analysis. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984).

We review matters of statutory construction de novo. *City of San An-*

---

**2.** The facts in the cited cases are not analogous: *Allied Chemical Co. v. DeHaven,* 824 S.W.2d 257 (Tex. App–Houston [14th Dist.] 1992,) (exceptional circumstances made it inequitable to prevent resigning partner from bringing suit on behalf of partnership during winding-up phase); *Tex. Westheimer Corp. v. 5647 Westheimer,* 68 S.W.3d 15, 21–22 (Tex. App.-Houston [1st Dist.] 2001, pet. denied) (dispute over rights to profit participation owed to partnership by third party; suit insti-

tuted during winding-up phase of partnership) In today's case, the partnership was not wound up, but as discussed below, Plaintiffs sold the partnership in its entirety.

**3.** It is undisputed that Willow itself has standing to pursue a BIFDL claim. Willow is not a party to this suit and Plaintiffs disavow that they are suing derivatively on any claims that belong to Willow.

*tonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003). In construing a statute, our objective is to determine and give effect to the legislature's intent. *Id.* If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. *Id.* We begin by examining the exact wording and apply the tenet that the legislature chooses its words carefully and means what it says. *Williams v. Vought,* 68 S.W.3d 102, 115 (Tex.App.-Dallas 2001, no pet.) (Morris, J., concurring). We determine legislative intent from the entire act and not just its isolated portions. *City of San Antonio,* 111 S.W.3d at 25.

BIFDL provides a judicial remedy for a "manufacturer" or "distributor," as defined in the statute,[4] who are parties to a distributorship agreement:

> If a manufacturer or distributor who is a party to an agreement pursuant to Section 102.51 of this code fails to comply with this Act or otherwise engages in conduct prohibited under this Act ... the aggrieved manufacturer or distributor may maintain a civil action in a court of competent jurisdiction....

Tex. Alco. Bev.Code Ann. § 102.79(a).

BIFDL prohibits a manufacturer from withholding approval of a distributor's transfer of its distributorship interest when the person or persons to be substituted "meet reasonable standards." The full provision reads as follows:

> *No manufacturer shall unreasonably withhold or delay its approval of any assignment, sale, or transfer of the stock of a distributor or all or any portion of a distributor's assets, distributor's voting stock, the voting stock of any parent corporation, or the beneficial ownership or control of any other entity owning or controlling the distributor, including the*

distributor's rights and obligations under the terms of an agreement *whenever the person or persons to be substituted meet reasonable standards. ...*

*Id.* § 102.76(a) (emphasis added).

In a case construing these two sections of BIFDL, the Corpus Christi Court of Appeals held that the plaintiff did not have a statutory right to maintain its cause of action against the distributor, because it failed to comply strictly with the statute's requirements. *Ace Sales Co., Inc. v. Cerveceria Modelo, S.A. de C.V.,* 739 S.W.2d 442, 447 (Tex.App.-Corpus Christi 1987, writ denied). The distributor Ace sought damages for the manufacturer's failure to approve a transfer of the distributorship rights to Ace's buyer. The court noted that section 102.79 of BIFDL provides a remedy for parties to an agreement under section 102.51, which in turn requires a written agreement. Tex. Alco. Bev.Code Ann. §§ 102.51, 102.79. Because Ace did not produce a written agreement, it had no remedy under BIFDL. *Id.* In so holding, the court relied on the principle that "if a cause of action and remedy for its enforcement are derived from a statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Id.* (quoting *Tex. Catastrophe Prop. Ins. Ass'n v. Council of Co–Owners of Saida II Towers Condo. Ass'n,* 706 S.W.2d 644, 646 (Tex.1986)).

**B. Analysis and Conclusion**

 Nauslar argues that although he is not a "distributor" under the BIFDL definition, he should be entitled to sue under the statute, based on its text, legislative history, and purpose. Nauslar

---

4. Under section 102.71, "distributor" is defined as a person licensed under Section 64.01 or 65.01 of the Act, which sections in turn define the activities a licensed distributor is authorized to perform. Tex. Alco. Bev.Code Ann. §§ 64.01, 65.01, 102.71.

points to the text of Section 102.76(a) that protects not just transfers of the distributorship itself, but also transfers of "the voting stock of any partner corporation," as well as the "beneficial ownership" of entities owning the distributor. He argues that persons representing those interests must have standing under the statute, to effectuate the broad protective purpose of the statute. He also points to pieces of legislative history to indicate that, in discussing the pending bill, the legislators did not distinguish between the business entity that comprises the distributorship and the individuals who own that entity.

We are not persuaded to adopt Plaintiffs' expansive reading of the text of BIFDL. Rather, we are persuaded by Appellee's argument that when the legislature intends to grant a remedy to all persons who might be injured by a statutory violation, it plainly grants a remedy to "injured persons." *See, e.g.,* TEX. BUS. & COM.CODE ANN. § 19.02 (Vernon 2002) (granting judicial remedy to "a person injured" by a violation of the statute regulating relationship between manufacturers and dealers of particular equipment); TEX. OCC.CODE ANN. § 2352.201 (Vernon 2004) (violators of statute are liable to "an injured party . . .").

We apply the tenet that the legislature chooses its words carefully and means what it says. *Williams,* 68 S.W.3d at 115. The remedies section, Section 102.79(a), plainly states who may sue for violations of the statute: "manufacturers" and "distributors," as defined under the statute, who are party to a distributorship agreement. These plaintiffs do not fall within the statutorily defined class of persons who may sue. Neither are we persuaded to read the statute expansively to go beyond its plainly stated purpose. The statute states that its purpose is "to promote the public's interest in the fair, efficient, and competi-

tive distribution of beer within the state. . . ." TEX. ALCO. BEV.CODE ANN. § 102.72. As noted, Willow itself has standing to redress violations of the statute. This satisfies the statutory purpose of protecting the *general public interest* in fair competition. We conclude the statutory purpose does not extend to protect Plaintiffs' individual interests in obtaining higher compensation from the transfer of its interest in Willow. *Tex. Catastrophe Prop. Ins.,* 706 S.W.2d at 646 (when cause of action derives from statute, statutory provisions must be complied with in all respects or action not maintainable).

## C. Was the No–Assignment Clause Void?

■ Nauslar asserts Coors demanded that Willow sign a mutual release of any claims it had against Coors, which included Willow's warranty that it had not assigned any of its claims to a third party. Nauslar asserts that, but for Coors's insistence that he execute the release by Willow, he would have assigned Willow's claims to himself. The release, Nauslar asserts, violated the "anti-waiver" provision of BIFDL. He argues Coors should not be allowed to circumvent the section prohibiting unreasonable disapproval of a transfer by violating the section prohibiting the release of such claims. As a remedy, Nauslar invokes equity principles, urging the court to declare an "equitable assignment" of Willow's claims to Nauslar, thus enabling him to sue—as constructive assignee of Willow's claims—under BIFDL.

Section 102.72(c) of BIFDL states, "The effect of this Act may not be varied by agreement. Any agreement purporting to do so is void and unenforceable to the extent of such variance only." Nauslar asserts that this "anti-waiver" provision prohibited Coors from conditioning its approval of the sale of Willow on Willow's

release of its claims against Coors. Nauslar insists the only permitted reason for disapproving a transfer under section 102.76 is when the proposed transferee fails to meet "reasonable standards." Coors is thus not permitted to disapprove a transfer based on a failure to sign a release. Thus Nauslar argues, the release-with-non-assignment clause, which waives the distributor's BIFDL claim, should be declared void under the anti-waiver provision, section 102.72(c).

We note that the issue Nauslar raises, whether he individually had statutory standing to pursue Willow's claim, turns on the permissibility of the clause in which Willow warrants it did not assign its claims to a third party. Thus, we need not address whether the release by Willow of its own BIFDL claims against Coors was prohibited by the anti-waiver provision in section 102.76(c). The issue is this: Is a distributor's representation that it has not assigned its statutory claims, if any, to a third party an agreement that "varies the effect of the BIFDL" so as to be void? As discussed, the plain language of section 102.79 grants a right of action only to "distributors or manufacturers" that are party to a distributorship agreement. Nauslar points to no authority to indicate that BIFDL claims must remain freely assignable to those not otherwise entitled to bring such claims in their own right. And we see no language in the text of the statute requiring the reading urged by Plaintiffs.

Accordingly, we hold that neither Plaintiff has standing to bring the claims, on their own behalf, seeking redress for violations of BIFDL.

## III. Plaintiffs' Causes of Action Asserted "On Behalf Of" Willow

We turn to Plaintiffs' assertion of causes of action purportedly brought "on behalf of" Willow. Plaintiffs assert—as the *former partners in and owners of* Willow— they are entitled to recover personally on Willow's claims for injuries suffered by Willow. Plaintiffs argue Defendants' challenges go to the issue of "claim ownership" only. They assert, "An argument about whether a current or former owner, as distinct from his company, owns a particular claim is an argument about capacity."

### A. Legal Principles

A plaintiff must have both standing and capacity to bring a lawsuit. *Coastal Liquids Transp. L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex.2001). A party has capacity to sue when it has legal authority to act, regardless of whether it has a justiciable interest in the controversy. *Nootsie, Ltd.*, 925 S.W.2d at 661. Standing pertains to a person's justiciable interest in a suit and is a component of subject-matter jurisdiction. *See Tex. Air Control Bd.*, 852 S.W.2d at 443, 445–46. Capacity is a party's legal authority to go into court to prosecute or defend a suit. *El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 249 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

### B. Analysis and Conclusion

Plaintiffs allege, and it is undisputed, that Plaintiffs sold their interest in the Willow partnership to Miller. Willow's causes of action belong to the partnership, not to its partners. Absent an agreement otherwise, Willow's assets, including any chose in action it held, would have transferred to Miller in the sale.[5]

---

**5.** Under the Texas Revised Limited Partnership Act (TRLPA), the partnership, not the partners, own the partnership's property.

Tex.Rev.Civ. Stat. Ann. art. 6132a–7.01 (Vernon Supp.2004–05). When a business entity is acquired in its entirety by another, in the

■ Plaintiffs do not allege that they consensually acquired legal title to Willow's causes of action—and thus possess exclusive authority (capacity) to prosecute and recover on Willow's claims. That is, they do not allege that, despite the sale to Miller, they retained title to Willow's causes of action, or otherwise acquired those assets by assignment. Indeed, Plaintiffs allege and argue the opposite: they allege that Coors conditioned its approval of the sale on Willow's warranting it had not assigned its claims against Coors to a third party. Nauslar argues, but for that condition, he would have caused Willow to assign its claims to himself.[6]

Plaintiffs thus judicially admit they have do not own legal title to Willow's causes of action. *Houston First American Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983) (judicial admissions are assertions of fact, not pled in the alternative, in the live pleadings of a party). Plaintiffs do posit the "constructive assignee" theory by which to establish their alleged right to bring Willow's causes of action. As a legal basis, they argue the warranty of no assignment violates BIFDL and thus should

be declared void. We concluded above, as a matter of law, that the non-assignment clause does not violate BIFDL. Plaintiffs allege no other legal basis to avoid the effect of their having failed to acquire the legal right to prosecute and personally recover on Willow's causes of action.

■ To bring suit and recover on a cause of action, a plaintiff must have both standing and capacity. *El T. Mexican Rests.,* 921 S.W.2d at 250. It is recognized that a party may plead himself out of court, e.g., the plaintiff may plead facts which affirmatively negate his cause of action. *Tex. Dept. of Corrections v. Herring,* 513 S.W.2d 6, 10 (Tex.1974) (citing *Schroeder v. Tex. & Pacific Ry. Co.,* 243 S.W.2d 261 (Tex.Civ.App.-Dallas 1951, no writ)). Plaintiffs affirmatively negate that they own legal title to Willow's claims, asserting instead a legal theory to overcome that fact, which we have rejected.[7] We conclude that, on the state of the pleadings, Plaintiffs lack capacity to bring Willow's partnership claims. Thus, the suit cannot proceed on those causes of action. We decline to remand for the trial court to engage in a futile inquiry. *Wilson*

---

absence of specific terms to the contrary, both the liabilities and assets of the acquired company are transferred to the purchaser. *Duke Energy Field Servs. Assets, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 68 S.W.3d 848, 850 (Tex.App.-Texarkana 2002, pet. denied).

6. Plaintiffs plead, in their live pleading:
 [A]s a condition for gaining its approval, and in tacit acknowledgement of its past wrongdoing, Coors extracted a purported release from Willow for claims against Coors arising out of its former, illegal conduct.
 . . .
 Coors' release also contained the following provision requiring Nauslar to represent that he had not assigned Willow's claim to any third party . . .
 If Coors had not conditioned approval of Nauslar's sale of Willow and DEN to Miller

of Dallas on execution of its release in its original form, and had instead agreed to allow assignments, Nauslar would have assigned to himself all rights possessed by Willow to sue Coors for the claims alleged in this petition.

7. In addition, at the end of the first hearing, the trial court ordered Plaintiffs to replead with much more specificity so that you make it clear "who is suing for what, what wrong to whom, when, and causing whatever for what period of damages.... I'm probably going to grant [the pleas to jurisdiction] the next go round if you don't make it clear...." *See Harris County v. Sykes,* 136 S.W.3d 635, 639 (Tex.2004) (if plaintiff given opportunity to amend and still fails to allege facts sufficient to withstand plea to jurisdiction, court should dismiss action).

*v. Texas Parks and Wildlife Dept.*, 8 S.W.3d 634, 635 (Tex.1999) (declining to remand for retrial of issue on which no evidence was offered; such "would be improper and, it appears, futile"); *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex.1979) (declining to remand when futile and not in furtherance of judicial economy). We conclude the claims asserted "on behalf of" Willow were properly dismissed. Accordingly, we need not reach the issue whether Plaintiffs also lacked standing to pursue Willow's claims. In addition, we need not reach other unrelated issues raised by Plaintiff.

## IV. Attorney Fees under BIFDL

Coors asserts, on cross-appeal, that the trial court erred in denying Coors attorney fees under BIFDL. Coors argues it prevailed on the BIFDL claims and an award of attorney's fees is mandatory to the prevailing party in an action brought under BIFDL.

> Section 102.79(c) of BIFDL states,
>
> The *prevailing party to any action* under Subsection (a) of this section shall be entitled to actual damages, including the value of the distributor's business, as specified in Section 102.77 of this code, *reasonable attorney's fees,* and court costs.

TEX. ALCO. BEV.CODE ANN. § 102.79(c) (emphasis added). Subsection (a) provides for a right of action for a "manufacturer or distributor" who is party to a distributorship agreement. If the defending manufacturer or distributor fails to comply with the statute, "the aggrieved manufacturer or distributor *may maintain* a civil action in a court of competent jurisdiction...." *Id.* § 102.79(a) (emphasis added).

Plaintiff's respond that, if they do not have standing under the statute, then the trial court lacks jurisdiction to award attorney's fees, relying on *Smith v. Tex.*

*Improvement Co.*, 570 S.W.2d 90, 92 n. 3 (Tex.App.-Dallas 1978, no writ) (when court lacks jurisdiction, court cannot render judgment j.n.o.v.; only valid order is one of dismissal).

 We have concluded that Plaintiffs lack standing to bring the BIFDL claims, either in their own right or "on behalf of" Willow. Coors thus qualifies as a "prevailing party" within the meaning of section 102.79(c). *Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex.App.-Tyler 2002, no pet.) ("prevailing party" successfully prosecutes or defends against an action; prevailing party is one who is vindicated). The BIFDL claims were brought under subsection (a) as section 102.79(c) requires. Further the fee award is mandatory, in that subsection (c) explicitly states the prevailing party "shall" recover reasonable attorney's fees. *See Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 812 (Tex. App.-Dallas 1987, no writ) (fees mandatory under statutory provision stating "consumer who prevails *shall* be awarded court costs and reasonable and necessary attorney's fees").

The Plaintiffs' reliance on the broad statements in *Smith* is misplaced. That case did not address an issue involving a statutory provision mandating an award of fees. A trial court's dismissal for lack of subject-matter jurisdiction does not prevent the concurrent award of attorney's fees under the mandatory award provision. *See Galveston County Comm'rs Court v. Lohec*, 814 S.W.2d 751, 755 (Tex.App.-Houston [ (14th Dist.) ] 1991), *rev'd on other grounds*, 841 S.W.2d 361 (Tex.1992) (under declaratory-judgment statute, trial court could award attorneys' fees against party found to have no standing). Further, the statute is worded such that a manufacturer or distributor may *maintain an action* and the prevailing party in that

action *shall* recover reasonable attorney fees. Thus, the statutory text mandates the award of fees even if the action cannot be *maintained,* whether or not it is dismissed for lack of jurisdiction. Accordingly, we reverse the trial court's order denying Coors attorney's fees and remand that issue for further proceedings.

Accordingly, we **AFFIRM** the trial court's dismissal of all of Plaintiffs claims. We **REVERSE** the trial court's order denying Coors attorney's fees under BIFDL and **REMAND** that issue for further proceedings.