ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

March 15, 2006

Mr. Murray Walton
Executive Director
Texas Structural Pest Control Board
Post Office Box 1927
Austin, Texas 78767-1927

Opinion No. GA-0414

Re: Whether the Texas Structural Pest Control Board may require apartment employees to obtain licenses before they may apply pesticides to the apartment landscape (RQ-0398-GA)

Dear Mr. Walton:

You ask whether the Texas Structural Pest Control Board (the "Board") may require apartment employees whose regular duties include the application of pesticides to the apartment landscape to obtain a license.[1]

Generally, a person may not engage in the business of structural pest control unless the person holds a license from the Board. *See* TEX. OCC. CODE ANN. §§ 1951.201, .301(b) (Vernon 2004). The Board must develop standards and criteria for issuing four varieties of structural pest control licenses: (1) the business license, (2) the certified commercial applicator's license, (3) the certified noncommercial applicator's license, and (4) the technician's license. *See id.* § 1951.203. A person is generally "engaged in the 'business of structural pest control'" if the person performs certain "services for compensation, including services performed as part of the person's employment." *Id.* § 1951.003. The services described in the statute include "services designed to prevent, control, or eliminate an infestation [of certain described pests] by the use of insecticides, pesticides rodenticides, fumigants, allied chemicals or substances, or mechanical devices." *Id.* § 1951.003(3).[2] Thus, if an employee provides the services described in section 1951.003, then the

---

[1]*See* Letter from Murray Walton, Executive Director, Texas Structural Pest Control Board, to Honorable Greg Abbott, Attorney General of Texas (Sept. 19, 2005) (on file with the Opinion Committee, *also available at* http://www .oag.state.tx.us) [hereinafter Request Letter]; Brief from Glen Grunberger, Texas Structural Pest Control Board, to Nancy S. Fuller, Chair, Opinion Committee, Office of the Attorney General (Nov. 17, 2005) (on file with the Opinion Committee) [hereinafter Board Brief].

[2]The Board suggests that an opinion from this office established as a general principle that if the Board has jurisdiction of services concerning a structure the jurisdiction includes the "curtilage or grounds around structures occupied by the public." Board Brief, *supra* note 1, at 5–6 (citing Tex. Att'y Gen. Op. No. M-1115 (1972)). The opinion addressed the meaning of "engaged in the business of pest control" as that phrase appeared in the predecessor to section 1951.003. *See* Tex. Att'y Gen. Op. No. M-1115 (1972); Act of May 31, 1971, 62d Leg., R.S., ch. 726, § 2,

(continued...)

employee is engaged in the practice of structural pest control and subject to the Board's licensing requirements unless exempted by another provision in chapter 1951. *See id.* § 1951.003.

Sections 1951.051, 1951.303, and 1951.459 are particularly pertinent to the employees of an apartment building owner. *See id.* §§ 1951.051, .303, .459. We consider these sections in turn. Section 1951.051 contains a limited exception for unlicensed persons using certain substances on an owner's property. *See id.* § 1951.051. Those substances must not be restricted-use or state limited-use pesticides or be prohibited by state or other law. *See id.* § 1951.051(a)(1)–(3). Section 1951.051 provides that an unlicensed individual may use permissible substances but "only on premises" that are:

> (b) . . .
>
>> (1)  owned by the individual;
>>
>> (2)  in which the individual owns a partnership or joint venture interest; or
>>
>> (3)  of a person who employs the individual primarily to perform services other than pest control.
>
> (c) Subsection (b)(3) does not apply to:
>
>> (1)  an apartment building;
>>
>> (2)  a day-care center;
>>
>> (3)  a hospital;
>>
>> (4)  a nursing home;
>>
>> (5)  a hotel, motel, or lodge;

---

[2](...continued)
1971 Tex. Gen. Laws 2363 (former article 135b-6, § 2(a) of the Revised Civil Statutes), *amended by* Act of May 30, 1975, 64th Leg., R.S., ch. 709, § 2, 1975 Tex. Gen. Laws 2251, *repealed and recodified by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, §§ 4, 13, 2001 Tex. Gen. Laws 4570, 4862, 5020. The opinion concluded that the statute applied to a person treating the lawn and trees around a residence. *See* Tex. Att'y Gen. Op. No. M-1115 (1972) at 5. But the opinion also noted that the statute was subject to exemptions including an exemption for regular employees of the owner. *See id.* Moreover, the specific statutory language considered in the opinion was later substantially revised by the legislature. *See* Act of May 30, 1975, 64th Leg., R.S., ch. 709, § 2, 1975 Tex. Gen. Laws 2251, *repealed and recodified by* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, §§ 4, 13, 2001 Tex. Gen. Laws 4570, 4862, 5020 (codified at TEX. OCC. CODE ANN. § 1951.003(1)(A)–(B) (Vernon 2004)). Consequently, even if M-1115 may be read as the Board suggests, its construction of the statues in 1972 has only limited usefulness to the construction of present chapter 1951 of the Occupations Code.

(6) a warehouse;

(7) a food-processing establishment;

(8) a facility owned by the state or a political subdivision of the state . . .; or

(9) a school.

*Id.* § 1951.051(b)–(c). The exception in subsection (b)(3) is for an employer's "premises." *Id.* § 1951.051(b)(3). The exception to the exception in subsection (c)(1) is for an "apartment building." *Id.* § 1951.051(c)(1). Chapter 1951 defines an "apartment building" as a "building" consisting of two or more dwelling units. *See id.* § 1951.002(1). "Building" is not defined, but undefined words and terms generally are given their ordinary meaning. *See* TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). A "building" is commonly understood to be an edifice or structure.[3] By contrast, the term "premises" generally denotes both land as well as the buildings or structures located on the land.[4] The plain language of subsections (b) and (c)(1) of section 1951.051 permits an apartment employee whose principal duties are not pest control to use the described permissible substances on the premises other than the buildings themselves. *See* TEX. OCC. CODE ANN. § 1951.051 (Vernon 2004). Depending on the facts in a particular case, premises other than an apartment building could include the surrounding landscape.

We do not construe this statutory language in isolation. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) (requiring statutory words and phrases to be construed in context). The Board suggests that the term "apartment building" should be considered in context with the other terms listed in section 1951.051(c), such as "a hospital," "a facility owned by the state or a political subdivision," or "a school," and should be construed as identifying the types of premises excluded from the application of section 1951.051(b)(3). TEX. OCC. CODE ANN. §§ 1951.002(1),

---

[3]*See, e.g.,* TEX. GOV'T CODE ANN. § 1232.003(3)(A)–(B) (Vernon 2000) (in provisions concerning public finance, "'building' means . . . a structure used by a state agency to conduct state business[] and . . . the major equipment or personal property related functionally to a structure"); TEX. HEALTH & SAFETY CODE ANN. § 343.002(2) (Vernon 2001) (in provisions concerning abatement of public nuisances, "'building' means a structure built for the support, shelter, or enclosure of a person, animal, chattel, machine, equipment, or other moveable property"); TEX. PEN. CODE ANN. § 28.01(2) (Vernon 2003) (concerning offenses against property, "'[b]uilding' means any structure or enclosure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use").

[4]*See, e.g.,* TEX. ALCO. BEV. CODE ANN. § 11.49(b) (Vernon 1995) (providing that in that code "'premises' means the grounds and all buildings, vehicles, and appurtenances pertaining to the grounds, including any adjacent premises if they are directly or indirectly under the control of the same person"); TEX. HEALTH & SAFETY CODE ANN. § 343.002(2) (Vernon 2001) (concerning abatement of public nuisances, "'[p]remises' means all privately owned property, including vacant land or a building designed or used for residential, commercial, business, industrial, or religious purposes [as well as] a yard, ground, walk, driveway, fence, porch, steps, or other structure appurtenant to the property"); TEX. TAX CODE ANN. § 33.51(i)(1) (Vernon Supp. 2005) (concerning writ of possession, "'[p]remises' means all of the property described in the purchaser's deed, including the buildings, dwellings, or other structures located on the property").

.051(c)(1)–(9) (Vernon 2004); Board Brief, *supra* note 1, at 6–11. However, there is nothing inherent in the terms listed in section 1951.051(c)(1)–(9) to guide whether they should be uniformly construed to include a building as well as its surrounding premises. *See* TEX. OCC. CODE ANN. § 1951.051(c)(1)–(9) (Vernon 2004). To the contrary, the legislature specifically used the term "building" in subsection (c)(1) as an exception to the authority to use permitted substances on the "premises" in subsection (b). We must assume that "the legislature chooses its words carefully and means what it says." *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 252–53 (Tex. App.—Dallas 2005, no pet.). Had the legislature intended section 1951.051(c)(1) to apply not only to an apartment building but to its premises as well, it could have said so.

The Board contends that its construction of section 1951.051 is supported by sections 1951.303 and 1951.459. *See* Board Brief, *supra* note 1, at 6–11. Section 1951.303 authorizes certain employees to engage in structural pest control if the employee obtains a noncommercial applicator's license. *See* TEX. OCC. CODE ANN. § 1951.303 (Vernon 2004). That section provides, in pertinent part:

> (b) An individual who does not hold a certified commercial applicator's license may not engage in the business of structural pest control unless the individual holds a certified noncommercial applicator's or technician license and:
>
> > (1) is employed by the state or a political subdivision of the state and engages in the business of structural pest control other than by applying a general use pesticide in an incidental use situation; or
> >
> > (2) engages in the business of structural pest control as an employee of a person who owns, operates, or maintains a building that is:
> >
> > > (A) an apartment building;
> > >
> > > (B) a day-care center;
> > >
> > > (C) a hospital;
> > >
> > > (D) a nursing home;
> > >
> > > (E) a hotel, motel, or lodge;
> > >
> > > (F) a warehouse;
> > >
> > > (G) a food-processing establishment, other than a restaurant, retail food, or food service establishment; or

> (H)     a school.

*Id.* § 1951.303(b). On a related subject, section 1951.459 provides:

> The owner of a building that is an apartment building, day-care center, hospital, nursing home, hotel, motel, lodge, warehouse, school, or food-processing establishment, other than a restaurant, retail food, or food service establishment, may obtain pest control services for that building from a person only by:
>
> > (1)     contracting with a person who holds a license to perform the services; or
> >
> > (2)     requiring a person employed by the owner who is licensed as a certified noncommercial applicator or technician to perform the services.

*Id.* § 1951.459. The Board suggests that these statutes establish a categorical rule that an employee of an apartment building owner must be licensed to engage in structural pest control services on the premises. However, considering section 1951.459 first, that statute's terms require an apartment building owner to obtain pest control services from an employee or other person who has a license only when the services are "for that building." *Id.* § 1951.459. Section 1951.459 does not purport to apply to services rendered for the premises generally.

Section 1951.303, if read literally, would appear to categorically require all employees of the owner of an apartment building to hold a noncommercial applicator's license or other license before they may engage in any act that may constitute the business of structural pest control. *Id.* § 1951.303. However, giving section 1951.303 that construction would conflict with section 1951.051(b)'s authority for an employee to apply permitted substances to property owned by the employer, such as the employer's own residence. *See id.* §§ 1951.051(b), .303. If possible, we must construe statutes to harmonize with each other. *See La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex. 1984). When we construe sections 1951.051, 1951.303, and 1951.459 together, we conclude that section 1951.303 requires an apartment employee to hold a chapter 1951 license only when the employee renders structural pest control services for the apartment building. Section 1951.303 does not require an employee of the owner of an apartment building to hold a license before the employee may use permitted substances under section 1951.051(b) on the employer's premises other than the apartment building itself.

### S U M M A R Y

Under section 1951.051 of the Occupations Code, the Texas Structural Pest Control Board may not require an employee of the owner of an apartment building to obtain a license before the employee may use certain substances on the premises other than the apartment building itself.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee