Robert LEWIS and Sutter Acquisition
Fund, L.L.C., Appellants

v.

CNL RESTAURANT PROPERTIES,
INC., et al., Appellees.

No. 05–05–00878–CV.

Court of Appeals of Texas,
Dallas.

May 29, 2007.

D. Ronald Reneker, Munsch Hardt Kopf & Harr PC, Dallas, for Appellant.

Charles A. Gall, Jenkins & Gilchrist, Shelbi Lee Barnhouse, Ken Carroll, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, for Appellee.

Before Justices BRIDGES, FRANCIS, and MAZZANT.

## OPINION

Opinion by Justice BRIDGES.

Appellants Robert Lewis and Sutter Acquisition Fund, L.L.C. appeal from the trial court's final judgment granting the plea to the jurisdiction and supplemental plea to the jurisdiction filed by appellees CNL Restaurant Properties, Inc., CNL Restaurant Investments, Inc., Restaurant Capital Corp., U.S. Restaurant Properties, Inc., CNL Realty Corp., James M. Seneff, Jr., Robert A. Bourne, and the eighteen CNL Income Fund limited partnerships. In a single point of error, Lewis contends the trial court erred in granting the plea to the jurisdiction and supplemental plea to the jurisdiction. We overrule Lewis's point of error and affirm the trial court's judgment.

### Background

The CNL Income Funds were eighteen limited partnerships organized under Florida law for the purpose of acquiring restaurant properties. Appellants were limited partners in the CNL Income Funds. CNL Realty Corp., James M. Seneff, Jr., and Robert A. Bourne were the general partners of the CNL Income Funds. Seneff and Bourne were also directors and stockholders of CNL Restaurant Properties, Inc. ("CNLRP"), a real estate investment trust that provided services to restaurant chains.

CNLRP, the CNL Income Funds, and U.S. Restaurant Properties, Inc. ("USRP"), a self-advised real estate investment trust, began merger talks. They reached an agreement that provided that CNLRP and the CNL Income Funds would merge into USRP and its subsidiaries. Pursuant to the merger agreement, USRP would be the surviving corporation and CNLRP and the CNL Income Funds would cease to exist. The proposed merger was independently evaluated and determined to be financially fair to the limited partners of the CNL Income Funds. On January 3, 2005, the parties to the merger filed a final proxy statement with the Securities and Exchange Commission.

Appellants filed this lawsuit on January 5, 2005, two days after the issuance of the proxy statement. They asserted claims for breach of contract, breach of fiduciary duty, and for an accounting. The appellants complained that, under the proposed merger, they will receive inadequate consideration based upon the amount of consideration they are to contribute to the surviving corporation. Appellees filed a plea to the jurisdiction, asserting that the appellants lacked standing because the claims were derivative and belonged to the CNL Income Funds.

On February 24, 2005, the limited partners in the CNL Income Funds approved the merger and completed the transactions called for in the merger agreement. As consideration for the merger, each limited partner received both cash and stock certificates in the surviving corporation. USRP delivered the cash to the general partners who, in turn, delivered it to the limited partners. A transfer agent for USRP delivered the stock certificates to the general partners. The general partners then delivered the certificates to the limited partners.

The trial court conducted a hearing on the plea to the jurisdiction. On May 26, 2005, the trial court signed an order granting the plea to the jurisdiction. The trial court concluded that the limited partners lacked standing because their claims were derivative.

## Plea to the Jurisdiction

■ In a single point of error, appellants contend the trial court erred in granting the plea to the jurisdiction. We review de novo the trial court's ruling on a plea to the jurisdiction. *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242 (Tex.App.-Dallas 2005, no pet.). In reviewing the ruling, we construe the allegations in the pleadings in the plaintiff's favor. *Id.* at 249. As the plaintiffs below, appellants bore the burden to allege facts that affirmatively demonstrated the trial court's jurisdiction to hear the case. *Id.* at 248.

■ The CNL Income Funds are Florida limited partnerships and all parties agree that Florida law governs this case. A derivative action is a cause of action brought by a stockholder to enforce a right of action that exists on behalf of a corporation. *Fox v. Prof'l Wrecker Operators of Florida, Inc.*, 801 So.2d 175, 179 (Fla.Dist. Ct.App.2001). A derivative action seeks redress for an injury suffered by the corporation or the stockholders generally. *Id.* By contrast, a direct action seeks redress for an injury suffered directly by the stockholder that is separate from any injury sustained by the other stockholders. *Id; AmSouth Bank v. Wynne*, 772 So.2d 574, 575 (Fla.Dist.Ct.App.2000).

■ Florida employs the separate and distinct injury test to determine whether a stockholder may bring a direct action. *Alario v. Miller*, 354 So.2d 925 (Fla.Dist.Ct.App.1978). Under the separate and distinct injury test, the injury must be sustained directly by the stockholder and the injury must be separate and distinct from any injury sustained by other stockholders. *Id.* at 926. The separate and distinct injury test applies to partnerships. *See Walco Investments, Inc. v. Thenen*, 947 F.Supp. 491, 498 n. 4 (S.D.Fla.1996).

The first amended petition alleged injuries to the limited partners generally. It is a class action lawsuit asserting that the rights of all the limited partners under the partnership agreement were violated. Lewis stated in the first amended petition: "[b]eginning in 2000, the CNL Defendants began utilizing their control and influence over the CNL Income Funds to bolster the operations of CNLRP, continuing their illusion of uninterrupted profit of CNLRP at the expense of CNL Income Funds." "The merger was the culmination of a scheme put into action by the CNL Defendants to bail themselves out of a financial predication that they created. Over the past five years, the CNL Defendants utilized the CNL Income Funds in a manner to benefit themselves and, specifically, CNLRP."

Appellants contend that their claims are direct because the consideration for the merger was conveyed directly to the shareholders. However, the procedure

through which the merger consideration is paid is not determinative under the separate and distinct injury test. Appellants urge this Court to follow the test set forth by the Delaware Supreme Court. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del.2004). The test set forth in *Tooley* provides that whether a claim is direct or derivative depends on: (1) who suffered the alleged harm; and (2) who would receive the benefit of any recovery. *Id.* at 1035. Appellants contend that because they received the consideration they suffered the harm and not the limited partnerships. Florida has not adopted the test set forth in *Tooley* and, therefore, we decline to follow it.

■ Appellants contend that they have met their burden of alleging a direct claim even under the separate and distinct injury test. Relying on non-Florida cases, they contend that challenges to the adequacy of merger consideration are direct claims. In *In re Real Estate Asoc. Ltd. P'ship Litig.*, 223 F.Supp.2d 1109 (C.D.Cal. 2002), the court held that limited partners could bring a direct action where the proceeds from the sale of the company were distributed directly to them. No Florida court has adopted the reasoning in this case and the holding conflicts with the separate and distinct injury test. In *Sturm v. Marriott Marquis Corp.*, 85 F.Supp.2d 1356 (N.D.Ga.2000), the court held that the plaintiff's merger claim was both derivative and direct. Under Florida law, however, if a claim can be characterized as both derivative and direct, it must be brought as a derivative action. *See Hodges v. Buzzeo*, 193 F.Supp.2d 1279, 1288 (M.D.Fla.2002). The court in *Everest Investors 8 v. McNeil Partners*, 114 Cal. App.4th 411, 8 Cal.Rptr.3d 31 (Cal.Ct.App. 2003) held that a merger claim was a direct action. In doing so, however, the court relied upon a California case that

expressly disapproved of the separate and distinct injury test. *Id.* at 428–29, 8 Cal. Rptr.3d 31. Appellants cite two other cases for the proposition that claims based upon false and misleading proxy disclosures are direct actions. *See Schwartzman v. Tenneco Mfg. Co.*, 319 F.Supp. 1278 (D.Del.1970); *In re Cencom Cable Income Partners, L.P. Litig.*, 2000 WL 130629 (Del.Ch.2000). These cases are inapplicable because appellants did not assert any causes of action based upon a false and misleading proxy statement.

Limited partners are not directly injured when they are damaged only to the extent of their proportionate interest in the partnership. *See Litman v. Prudential–Bache Properties, Inc.*, 611 A.2d 12, 16 (Del.Ch.1992). *Litman* was a pre-*Tooley* case applying the separate and distinct injury test. The limited partners in *Litman* complained that the general partners breached their fiduciary duties by inadequately monitoring their investments and by placing their interests in fees above the interests of the limited partners. *Id.* As a result, the limited partners complained that they received less money for the shares of stock. *Id.* In *Litman*, the court held that the "defendants' misconduct damaged plaintiffs only to the extent of their proportionate interest in the Partnership." *Litman*, 611 A.2d at 16. In holding that the limited partners' claims were derivative, the court concluded that "this was not a direct injury to the limited partners or one that existed independently of the Partnership." *Id.*

Like the plaintiffs in *Litman*, appellants complain that they received less money for the shares of stock because of the alleged misconduct of the general partners. The fact that the loss was not realized until the merger was completed does not convert the case into a direct action. *See 7547 Corp. v. Parker & Parsley Dev. Partners,*

*L.P.*, 38 F.3d 211, 222 (5th Cir.1994). In *Parker & Parsley,* unitholders in a partnership filed suit complaining of a proposed "roll-up transaction" where their interests were to be exchanged for stock in a newly formed corporation. The plaintiffs alleged that upon liquidation they will receive less stock in the new corporation because of conflicts of interest and self-dealing involved in the transaction. *Id.* at 215. The court held that the plaintiffs alleged a collective injury to the partnership. "That the disparities will eventually be passed on to the PDP unitholders upon liquidation of PDP does not commute the causes of action into direct claims . . ." *Id.* at 222. As in *Parker & Parsley,* we conclude that the fact that the injuries were not realized until the merger was completed is not determinative of the classification of their claims as derivative or direct.

Another case we find instructive is *In re J.P. Morgan Chase & Co.,* 2005 WL 1076069 (Del.Ch. Apr.29, 2005). In *J.P. Morgan,* shareholders of J.P. Morgan filed a class action contesting J.P. Morgan's buy out of Bank One. The class complained that J.P. Morgan paid a premium over the market share for Bank One. The class alleged breaches of fiduciary duty. J.P. Morgan moved to dismiss on the ground that the shareholders' claims were derivative, not direct. The shareholders claimed they were harmed directly because "the stockholders of the pre-merger [J.P. Morgan] now have less of a stake in the post-merger [J.P. Morgan]." *Id.* at 6. In holding that the shareholders' claims were derivative, the court noted, "[t]he plaintiffs, if they were harmed at all, were harmed indirectly and only because of their ownership in JPMC." "Any alleged dilution was a harm suffered by all pre-merger [J.P. Morgan] stockholders and, consequently, [J.P. Morgan] itself." *Id.* The same is true for appellants. Any harm resulting from the merger was only because of their ownership in the CNL Income Funds. The alleged harm was suffered by all pre-merger CNL Income Fund limited partners.

The alleged harm asserted by the limited partners was suffered by all the pre-merger limited partners. Again, under the separate and distinct injury test, the shareholder must suffer an injury that is separate and distinct from the other shareholders. The facts of this case do not pass the separate and distinct injury test. A direct action is not allowed when the limited partners are similarly situated. *See Falic v. Legg Mason Wood Walker, Inc.,* 347 F.Supp.2d 1260, 1270 (S.D.Fla. 2004). These facts do not satisfy the separate and distinct injury test. Accordingly, we conclude the trial court did not err in granting the plea to the jurisdiction.

We overrule the limited partners' point of error and affirm the trial court's order granting the plea to the jurisdiction.