**FREDERICKSBURG INDUSTRIES, INC., and Joseph Franklin Dunnigan, Appellants,**

v.

**FRANKLIN INTERNATIONAL, INC., Appellee.**

No. 04–94–00387–CV.

Court of Appeals of Texas, San Antonio.

Nov. 15, 1995.

Rehearing Overruled Nov. 15, 1995.

Michael Deitch, Deitch & Hamilton, P.C., Austin, for Appellant.

Larry D. Warren, Ryan G. Anderson, Grant T. McFarland, Ball & Weed, P.C., San Antonio, for Appellee.

Before CHAPA, C.J., and RICKHOFF and STONE, JJ.

## ON APPELLEE'S MOTION FOR REHEARING

CHAPA, Chief Justice.

Appellee's Motion for Rehearing is denied, the opinion of this Court issued September 27, 1995, is withdrawn and this opinion, addressing the standing of Joseph Dunnigan, is substituted therefor.

Appellants, Fredericksburg Industries, Inc., a furniture manufacturer, and its president, Joseph Dunnigan, sued appellee Franklin Industries, Inc., a glue manufacturer, for breach of contract, strict liability, breach of warranty, negligence, and DTPA arising out of the delamination of furniture. Before trial the court found that Dunnigan was not a proper party. The court directed a verdict for appellee on appellants' breach of contract and strict liability claims. A jury found for appellee on the balance of the claims, and the court rendered a take nothing verdict. Appellants' motion for new trial was overruled, and they bring this appeal on eighteen points of error. The dispositive issue before this court is whether the trial court committed reversible error in excluding evidence of similar happenings. We conclude that it did and reverse the judgment and remand the cause to the trial court for further proceedings.

## Factual Background

Appellants bought two barrels of laminating glue, Lam 6W, from appellee in 1990. When they used the glue for laminating plywood components of library furniture, the sheets came apart. Appellant Dunnigan contacted appellee, which sent a salesman to investigate. Appellee's lab tested the glue and found it did not meet specifications and showed signs of aging, but that its adhesive qualities remained intact. Appellee told appellants to continue using the remaining glue from the second barrel. Appellants did not immediately resume production, but when they did approximately three weeks later they encountered no further problems. Appellants claimed substantial losses in lost profits over the next two years due to the cumulative effects of the slowdown on their staffing and marketing efforts, eventually suing appellee for more than two million dollars.

## Standing of Mr. Dunnigan

In their tenth point of error, appellants contend that the trial court erred in finding that Joseph Dunnigan did not have the capacity to sue as a plaintiff in this case. Appellants assert that Dunnigan is entitled to individual recovery as an employee and landlord of Fredericksburg Industries, Inc., rather than in his capacity as a corporate shareholder.

■ It is well settled that a corporate shareholder may not recover damages individually for a wrong done solely to the corporation. *Wingate v. Hajdik,* 795 S.W.2d 717, 718 (Tex.1990); *Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216, 221 (1942), *cert. denied,* 320 U.S. 210, 63 S.Ct. 1447, 87 L.Ed. 1848 (1943). We agree with the appellee that

Dunnigan's attempt to distinguish his damages as those suffered in his capacity as a landlord and an employee is unconvincing.

◼ As the corporation's landlord and an employee of the corporation, Dunnigan stands in the same position as any of the corporation's other creditors. As such, he may not assert a claim against Franklin for affecting Fredericksburg's ability to satisfy its debts to Dunnigan. *Cf. Motorola, Inc. v. Chapman,* 761 F.Supp. 458, 460 (S.D.Tex. 1991) (holding individuals who guaranteed a debt on behalf of a corporation lacked standing to assert individual claims against the party that injured the corporation). Any claim Dunnigan has for unpaid wages or rent properly lies against Fredericksburg. Should Fredericksburg recover in its suit against Franklin, any damages awarded would be available to satisfy the corporation's debts, including those owed to Dunnigan as an employee or landlord. *See Hajdik v. Wingate,* 753 S.W.2d 199, 201 (Tex.App.— Houston [1st Dist.] 1988), *aff'd* 795 S.W.2d 717 (Tex.1990) (stating action for damages against a corporation must be brought by the corporation so that any recovery is available for payment to corporation's creditors). To rule otherwise would allow Dunnigan the possibility of a double recovery as both an individual plaintiff and as a creditor of the corporation. Appellants' point of error ten is overruled.

### Exclusion of Evidence

In their first two points of error, appellants allege the trial court erred in excluding evidence of two similar occurrences at two other manufacturers, which was offered to show similar happenings and notice of an alleged defect in the Lam 6W glue. The first incident involved delamination at a Thomasville Furniture factory in 1985, in which Lam 6W was used. The second incident involved a delamination at McDole Library Furniture in August 1990, the same month as the occurrence at issue, in which Lam 6W manufactured in the same month as appellants' glue was used. Appellants argue that the trial judge erred because he used the wrong legal standard to exclude the similar happenings.

1. Standard of Review

◼ The admission and exclusion of evidence are matters within the discretion of the trial court. *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied). Therefore, the trial court commits error only if it acts in an unreasonable or arbitrary manner, or acts without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Reviewing the trial court's evidentiary rulings requires a two-step analysis. "To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment." *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394 (Tex.1989). "Reversible error is not ordinarily shown in connection with rulings on questions of evidence unless the whole case turns on the particular evidence admitted or excluded." *Atlantic Mut. Ins. Co. v. Middleman,* 661 S.W.2d 182, 185 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *see Gee,* 765 S.W.2d at 396 (no reversible error when evidence is cumulative and not controlling on material issue dispositive to case).

2. Legal Standard on Admissibility of Similar Happenings

◼ The parties disagree on the appropriate legal standard for the admissibility of similar happenings. Appellee contends that the correct measure requires that the proponent establish that the occurrences are "substantially" similar, relying on this court's opinion in *Magic Chef, Inc. v. Sibley,* 546 S.W.2d 851, 855 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). In *Magic Chef,* we stated that "evidence of other accidents involving the same product is admissible to show its dangerous or hazardous nature if the accidents occurred under *the same or substantially similar conditions* as that involving the plaintiff." *Id.* at 855 (emphasis added). Appellants, on the other hand, as-

sert that the correct standard is a requirement that the occurrences are "reasonably" similar. We agree with appellants that a correct statement of current law requires merely reasonably similar circumstances. *See Missouri–K.T.R. Co. v. May,* 600 S.W.2d 755, 756 (Tex.1980) ("Evidence of earlier accidents which occurred under reasonably similar but not necessarily identical circumstances was admissible."); *Farr v. Wright,* 833 S.W.2d 597, 601 (Tex.App.—Corpus Christi 1992, writ denied); *John Deere Co. v. May,* 773 S.W.2d 369, 372 (Tex.App.—Waco 1989, writ denied); *see also McCraw v. Maris,* 837 S.W.2d 646, 649 (Tex.App.—Dallas 1990), *rev'd on other grounds,* 828 S.W.2d 756 (Tex.1992) (admissibility of other happenings is analyzed using rules of relevancy); STEVEN GOODE, OLIN G. WELLBORN III & M. MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 402.1 (Texas Practice 1993) (rules of evidence now more liberal in admitting evidence than comparable doctrines of prior Texas law).

■ As evidence that the trial judge applied an incorrect standard the appellants cite to the following instances in the record: (1) the court declared that "[y]ou've got to show me that they're really the same event" and "Somebody is going to have to offer me some evidence that Thomasville is the same as Fredericksburg"; (2) the court required that the two instances involve exactly the same hardwoods and the veneers although there was testimony that different types of hardwoods shared similar characteristics; (3) in an analogy of determining whether two car accidents would be similar, the trial court would require "the situation of them both going down the hill at grade of 30 degrees...."; and (4) requiring that "we are talking about exactly the same product." At one point, referring to his car accident analogy, the trial judge noted that "[y]ou have to show its exactly the same car and same circumstances." Moreover, counsel for appellee continually insisted to the judge that appellants had to "establish the proper predicate of substantially similar application in order to get that evidence in." Finally, the

judge stated, "I can't have the jury sit here and, unsophisticated, speculate which one of these things are going to be the same or similar occurrence, where, in essence, you had the same thing happen in Thomasville that happened in Fredericksburg."

On the other hand, the record also reveals numerous instances in which the judge refers to the requirement for admissibility as the "same or similar" circumstances or conditions. Nevertheless, we conclude from the record that the trial court required a more substantial predicate for the admissibility of similar happenings than is necessary under current law and the rules governing relevance.

3. The Excluded Incidents

a. The McDole Library Furniture Incident

The excluded evidence of the allegedly similar happening at McDole consisted of a laboratory report from appellee. McDole had experienced delamination using Lam 6W glue that had been manufactured in March 1990, the same month as one of the barrels of allegedly defective glue used by appellants. The laboratory test results indicated that the pH value, percentage of solids, viscosity, and speed of set varied from appellee's specifications. The report concluded, "The above data suggest that this product may be separating. We recommend that this drum be thoroughly agitated. The failed samples [of laminated panels] showed evidence of precuring.[1] At our suggestion, the spread was increased. The customer reports that good bonds are now being produced."

■ While it is true that there is no indication that the McDole panels were of the same materials as those at Fredericksburg, and there is no indication of the assembly process used, the incidents are similar in that the glue type was exactly the same, Lam 6W, the glue used in the two instances was manufactured in the same month, and the test results on both showed similar deviations in pH, percentage of solids, viscosity, and speed of set. In both instances the appellee deter-

---

1. "Procuring" means that the glue on panels has dried sufficiently before the panels are pressed

together to make plywood that the glue does not adhere.

mined that the product probably separated in the drum. In both instances good results were achieved with a heavier spread. Thus, the documentary evidence showed conclusively that the product in both instances deviated from standards, that the same type of damage occurred in both instances, and that the appellee's conclusions and remedies were the same in both situations. We conclude that there is sufficient similarity in the two incidents to make the McDole occurrence relevant. TEX.R.CIV.EVID. 401; *see Missouri–K.–T. R. Co.,* 600 S.W.2d at 756. Nor do we find the evidence's probative value substantially outweighed by its prejudicial effect. TEX.R.CIV.EVID. 403. It is up to the finder of fact to draw reasonable inferences from the evidence. *Middleman,* 661 S.W.2d at 185. It is reasonable to infer that the same instrumentality, glue, might cause the same result, delamination. Such evidence, when viewed in light of the totality of the evidence presented, is not unduly prejudicial, confusing, or cumulative. *See id.* We conclude that the trial court erred in excluding the evidence regarding the McDole incident.

b. The Thomasville Furniture Incident

In 1985, Thomasville Furniture experienced extensive delaminations involving plywood panels with hardwood cores. The excluded evidence consisted of call reports [2] and a laboratory report dealing with the delaminations at Thomasville. Appellee ran tests at Thomasville using both one hundred percent Lam 6W and a mix of Lam 6W with urea on cherry, maple, oak, and pecan cores and then passed them through bleach ovens at temperatures of up to 150 degrees. Resulting delaminations using pure Lam 6W ranged from one out of twenty-five cherry panels to twenty-five out of twenty-six pecan panels. Appellee then ran additional tests using hickory cores placed in 150–degree ovens overnight. One call report stated: "This is the biggest mess anyone at Thomasville ever remembers." Another call report

indicated that furniture in a warehouse that had previously "checked out OK" now showed eighty-three percent delaminations. Appellee's laboratory report concluded that "Laminating Glue 6W did not have sufficient heat-resistance to hold the construction together at elevated temperatures." It also stated that "[c]ontrol panels glued with Laminating Glue 6W showed severe delamination," and a test using very low-moisture pecan showed "severe delamination with Laminating Glue 6W." Further conclusions in the laboratory report were: "Laminating Glue 6W, used with or without urea lacks sufficient rigidity to maintain bonds on pecan and oak cores when subjected to long-term stresses or elevated temperatures"; and "It is now obvious that Laminating Glue 6W is inappropriate for use in laminating veneers onto high density hardwood cores."

Appellants contend that the above evidence is highly relevant and significant, because they alleged in part that the delamination was caused by the glue's failure under high temperatures used in processing as well as aging due to storage in high temperatures, and they also claimed appellee failed to warn of failure under high temperatures.[3] The trial court refused to admit the call reports and laboratory report of the Thomasville incident on the basis that appellants had failed to establish an adequate predicate showing sufficient similarity.

Appellants assert that the Thomasville incident was reasonably similar in that it involved delaminations on hardwood cores (appellants used poplar, a hardwood not tested at Thomasville); Dunnigan testified that the laminating process for hardwoods was similar; that appellants' process exposed the panels to drying ovens at 120–140 degrees, similar cold presses were used; and there was testimony that the formulation of the glue had not changed between the two incidents, and, thus, it was the same glue. Further, appellee stipulated to the call reports

---

**2.** A call report is an informal memo from appellee's salesperson to the home office describing a contact with a customer; in this case, personal or telephonic contacts discussing the problems encountered by Thomasville with delaminations.

**3.** Appellee's promotional information on the glue states that 3–ply birch panels showed no decrease in strength at 150 degrees; nor at 140 degrees for 48 hours, nor at 100 degrees for 24 hours.

and lab report as business records to authenticate the evidence.

Appellee counters that the incidents lack sufficient similarity because the woods tested were different, and the range of failure rate among the woods tested at Thomasville, from one out of twenty-five cherry panels to twenty-five out of twenty-six pecan panels, indicated that all hardwoods were not identical in nature and reacted differently to the bonding process; and the processes used at Thomasville varied significantly from appellants' in that Thomasville bleached their wood, which added water to the glue and reduced its heat resistance, before exposing it to heat ranging from 120–150 degrees for a prolonged period overnight, while appellants did not bleach the wood and exposed it to heat for much shorter periods of several minutes as the panels passed through drying ovens.

■■■■ While there are undoubtedly differences in the two occurrences, we nevertheless conclude that the Thomasville instance of delamination is reasonably similar to the instant occurrence, because they both involve the same glue, Lam 6W, and the same damaging occurrence, delamination on hardwood cores subjected to some heat. We hold that the trial court erred in excluding the evidence relating to the Thomasville delaminations. *Missouri–K.–T. R. Co.*, 600 S.W.2d at 756; *Farr*, 833 S.W.2d at 601; *John Deere Co.*, 773 S.W.2d at 372; *see* Tex. R.Civ.Evid. 401, 403. Nor do we find the evidence unduly prejudicial or misleading to the jurors. While the trial judge twice referred to the "unsophistication" of the jurors in their ability to differentiate between the various instances of delamination, we believe that the rules of evidence governing relevancy and the liberal admission of evidence support the admission of such evidence. "As a general rule, a fact finder has implied findings power, and can make a reasonable inference from the direct or circumstantial probative evidence." *Middleman*, 661 S.W.2d at 185. "The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inferences and deductions

from the evidence presented to it." *Harrison v. Harrison*, 597 S.W.2d 477, 485 (Tex. Civ.App.—Tyler 1980, writ ref'd n.r.e.). Had the excluded evidence been admitted, we have no doubt that the distinguishing features would have been clearly presented to the jury, which as the finder of fact would have weighed all the testimony and the evidence.

■■■■ Because we have concluded that the exclusion of the evidence was error, we must next inquire whether the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. "Thus, we must review the entire record to determine if the judgment was controlled by the testimony that should have been [included.]" *Gee*, 765 S.W.2d at 396; *see Grohn v. Marquardt*, 657 S.W.2d 851, 857 (Tex.App.— San Antonio 1983, writ ref'd n.r.e.) (excluding evidence is reversible error only if there is a reasonable belief that such exclusion caused the jury to render a different verdict).

■■■■ A review of the record indicates the following: (1) The laboratory tests run on samples from the two barrels of glue purchased by appellants deviated from specifications as to viscosity, pH value, percentage of solids and speed of set. As noted earlier, all of these defects were also noted in the McDole samples. On the other hand, tests run on *simulated samples*[4] indicated that the shear strength and wood failure percentage for these same samples exceeded the specifications, indicating that reproductions of the complained-of glue had adhesive qualities superior to appellee's specifications for the product. (2) There was conflicting expert testimony as to whether the glue was defective. (3) The appellee was able to present extensive deposition testimony from its witnesses, including officers of Franklin, but at each instance in which appellants' counsel reached a portion of a deposition that involved questioning on the McDole and Thomasville incidents, the trial court reaffirmed its ruling and excluded the testimony.

Thus, the appellants were deprived of the opportunity to present to the trier of fact

---

4. Because the laboratory received only small samples of the glues from the barrels at Fredericksburg, it simulated the properties of the sam-

ples and created reproductions on which to run additional tests as to adhesiveness.

highly probative evidence that the delamination incident at Fredericksburg was not an isolated event. Among the evidence the finder of fact would have heard was that the deviations in specifications of the appellants' glue were also present in other glue manufactured the same month, and which was also involved in delamination. Such evidence was supportive of appellants' breach of contract and warranty causes of action. Moreover, the Thomasville incident showed an awareness on the part of appellee that the glue presented problems in laminating veneers to hardwoods and that it did not perform effectively under heat conditions, which formed part of appellants' claims. *See generally John Deere Co.*, 773 S.W.2d at 372 (listing cases in which similar occurrences were relevant to determinative issues such as notice, defective design, failure to warn, and negligence). The excluded evidence was not cumulative, and had a direct bearing on a material issue dispositive to the case. *Gee*, 765 S.W.2d at 396. We conclude that the error in excluding the evidence of similar occurrences was reasonably calculated to cause, and probably did cause, rendition of an improper verdict. TEX.R.APP.P. 81(b)(1).

The trial court's finding that Joseph Dunnigan lacks standing to sue as a Plaintiff in this action is AFFIRMED. The balance of the judgment of the trial court is REVERSED and the cause is REMANDED to the trial court for a new trial.