

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HUGO BUSTAMANTE, JR., | § | |
| | | No. 08-17-00174-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 205th District Court |
| MIRANDA & MALDONADO, P.C., | § | |
| CARLOS A. MIRANDA, III, GABRIEL | | of El Paso County, Texas |
| PEREZ and CARLOS MALDONADO, | § | |
| | | (TC# 2015DCV0358) |
| Appellees. | § | |

**O P I N I O N**

Hugo Bustamante Jr. appeals the trial court's granting of Appellees' motion for summary judgment upon their plea to the jurisdiction and traditional motion for summary judgment. In four issues, Bustamante contends: (1) the trial court erred in concluding the legal malpractice claim was property of the bankruptcy estate because the claim accrued after conversion to Chapter 7; (2) even if the malpractice claim was property of the bankruptcy estate, the claim was orally disclosed at a hearing on the Chapter 7 case and was subsequently abandoned when the Chapter 7 trustee filed a report of no distribution; (3) the Appellees should be equitably estopped from using a judicial estoppel defense to the claims brought by Bustamante; and (4) Bustamante had standing to bring suit, either as a representative of the debtor corporation or individually on his own behalf.

We affirm.

## BACKGROUND

Hugo Bustamante Jr. was the sole shareholder and president of a closely-held corporation, Carlube, Inc. Carlube began experiencing financial difficulties, and Bustamante hired Miranda & Maldonado, P.C. to represent Carlube in a Chapter 11 reorganization under the Bankruptcy Code. In his capacity as president of the corporation, Bustamante signed an engagement contract for legal services on behalf of Carlube and the Law Firm filed the Chapter 11 proceeding in June 2012.

In February 2013, the U.S. Trustee filed a motion to convert Carlube's bankruptcy case from a Chapter 11 reorganization to a Chapter 7 liquidation proceeding. The court heard the motion approximately a week later. At the hearing, the U.S. Trustee stated he was moving for conversion for three reasons: first, Carlube had not been approved to continue to use cash collateral and therefore could not operate its business; second, Carlube had essentially broken even over the six months prior to the motion and therefore a workable reorganization plan was unlikely; and third, Carlube had not filed a reorganization plan in over six months. Counsel for Carlube, Gabriel Perez, urged the court to give his client one last opportunity at reorganization, asserting an adequate plan was possible and requesting Carlube receive a thirty-day approval to use cash collateral. The court opined that based on its review of the financial statements covering the preceding six months, the business was not making a profit and was still incurring new debt and it was therefore not capable of reorganization. It granted the motion to convert the case to Chapter 7 and denied Carlube's motion to use cash collateral. Now proceeding under Chapter 7, a hearing was held in April 2013 on a motion to show cause because Carlube had continued to operate and

2

pay expenses despite the conversion to Chapter 7. The Chapter 7 Trustee did not attend the hearing, but a representative of the U.S. Trustee's office was present. The U.S. Trustee's representative, however, stated that his office was not taking any position in the case and he was there "just to listen." At this hearing, counsel for Carlube stated on the record that Bustamante had told him he intended to sue him for malpractice for the conversion of the case to Chapter 7. He also noted his firm had filed an application to withdraw as counsel for Carlube. At the conclusion of the hearing, the court ordered Bustamante to discontinue operations that would result in depletion of the bankruptcy estate. The Law Firm was allowed to withdraw as counsel, and Carlube was thereafter listed as a pro se debtor.

In August 2013, the Chapter 7 Trustee filed a report of no distribution, indicating he had terminated his efforts to liquidate assets, that no funds were available for distribution to creditors, and that he had no objection to closing the case. The Chapter 7 case was closed the following month. Carlube involuntarily forfeited existence of its corporate charter in January of the following year due to failure to pay franchise taxes.

Bustamante sued Carlube's former attorneys for malpractice, asserting causes of action for professional negligence, negligent misrepresentations, breach of fiduciary duty, and gross negligence. In part, Bustamante claimed the Law Firm failed to timely extend the deadline on the cash collateral order and allowed it to expire, which resulted in a creditor moving to lift the bankruptcy stay. He also asserted the Law Firm had assured him it would file a reorganization plan within three and one-half months of filing the Chapter 11 petition but never did, which he claimed resulted in the conversion of the case to Chapter 7.

The Law Firm filed a plea to the jurisdiction and motion for summary judgment, asserting

Bustamante lacked standing because the legal malpractice claim was the property of Carlube's bankruptcy estate, thus giving the Chapter 7 Trustee exclusive standing to bring the claim. The Law Firm also asserted Bustamante had no standing to pursue the claim either individually or as a representative of Carlube. The trial court sustained the Law Firm's plea to the jurisdiction, granted the motion for summary judgment, and dismissed all of Bustamante's claims. This appeal followed.

## DISCUSSION

### Accrual of the Malpractice Claim

In his first issue, Bustamante contends the trial court erred in granting the motion for summary judgment because his legal malpractice claim accrued only after the case converted to Chapter 7. He contends that because the only legal harm was the conversion, no right to sue existed until after the case was converted. Because a Chapter 7 estate incorporates only the property of the debtor existing at the time of the conversion, the claim could not be part of the bankruptcy estate.

### *Standard of Review*

We review *de novo* a trial court's granting of a motion for summary judgment. *Merriam v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)(*citing Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012)). Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a. When, as here, the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious. *Merrimam*, 407 S.W.3d at 248, *(citing State v. Ninety Thousand Two Hundred Thirty–Five Dollars*

4

*& No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013)).

The plaintiff bears the burden of affirmatively demonstrating the trial court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is also a question of law reviewed *de novo*. *Id*. In assessing a plea to the jurisdiction, we begin our analysis with the live pleadings. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). We must construe the plaintiff's pleadings liberally, taking all factual assertions as true and looking to the plaintiff's intent. *Id*., (*citing Miranda*, 133 S.W.3d at 226). We must also consider evidence submitted to negate the existence of jurisdiction when necessary to resolve the jurisdictional issue. *Id*., (*citing Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

### *Applicable Law*

Subject matter jurisdiction is essential to a court's authority to decide a case. *SCI Texas Funeral Service, Inc. v. Hijar*, 214 S.W.3d 148, 153 (Tex.App.—El Paso 2007, pet. denied). Standing is a component of subject matter jurisdiction. *Vee Bar, Ltd. v. BP Amoco Corp.*, 361 S.W.3d 128, 131 (Tex.App.—El Paso 2011, no pet.). If a plaintiff lacks standing to assert a claim, the court has no jurisdiction over that claim. *Id*. Lack of standing can be raised by both a plea to the jurisdiction and a motion for summary judgment. *Schecter v. Wildwood Developers, L.L.C.*, 214 S.W.3d 117, 121 (Tex.App.—El Paso 2006, no pet.)(*citing Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 443 (Tex. 1993)); *Ranchero Esperanza, Ltd. v. Marathon Oil Co.*, 488 S.W.3d 354, 358 (Tex.App.—El Paso 2015, no pet.)(*citing Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)).

In Texas, standing "requires that there be (1) 'a real controversy between the parties,' that

5

(2) 'will be actually determined by the judicial declaration sought.'" *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848-849 (Tex. 2005)(quoting *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996)). Only the party whose primary legal right has been breached has standing. *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 249 (Tex.App.—Dallas 2005, no pet.). "Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit." *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976)(only the defrauded party may bring suit to set aside a deed obtained by fraud). For example, an individual stakeholder in a legal entity does not have standing to recover personally for harms done to the legal entity. *Nauslar*, 170 S.W.3d at 250. "It is the nature of the wrong, whether directed against the entity only or against the individual stakeholder, and not the existence of injury, that determines who may sue." *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360 (Tex.App.—Houston [14th Dist.] 2016, pet. denied); *Fredericksburg Industries, Inc. v. Franklin Intern., Inc.*, 911 S.W.2d 518, 521 (Tex.App.—San Antonio 1995, writ denied)(president of corporation lacked standing to sue distributor for president's lost wages resulting from distributor's defective delivery; the cause of action against the distributor belonged to the corporation, and the president's claim for lost wages was against the corporation).

In reviewing a case that involves a bankruptcy proceeding, we apply federal bankruptcy law. *Crane v. Richardson Bike Mart, Inc.*, 295 S.W.3d 1, 4 (Tex.App.—El Paso 2009, no pet.). Section 541 of the Bankruptcy Code creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1). This includes causes of action belonging to the debtor at the time the case commences. *Matter of Swift*, 129 F.3d 792, 795 (5th Cir. 1997). It also typically includes causes of action acquired after

6

commencement of a Chapter 11 bankruptcy. *Industrial Clearinghouse, Inc. v. Jackson Walker, L.L.P.*, 162 S.W.3d 384, 387 (Tex.App.—Dallas 2005, pet. denied)(company's legal malpractice claim against law firm that arose after the filing of the bankruptcy petition was property of the company's bankruptcy estate). After conversion of a case to Chapter 7, the Chapter 7 trustee has exclusive standing to assert any causes of action belonging to the bankruptcy estate. *Crane*, 295 S.W.3d at 5; *In re Croft*, 737 F.3d 372, 375 (5th Cir. 2013)(*citing In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)).

The Fifth Circuit recently addressed the issue of accrual and ownership in the context of a malpractice claim involving an involuntary conversion to Chapter 7. *In re Cantu*, 784 F.3d 253 (5th Cir. 2015). In *Cantu*, the appellants were a husband and wife who had sued their attorney after their bankruptcy was converted from a Chapter 11 reorganization to a Chapter 7 liquidation. *Id*., a 255. The Chapter 7 trustee intervened in their suit, asserting the couple's claims against the attorney belonged to the estate. *Id*. The parties eventually settled the malpractice case, but the settlement funds were deposited into the court registry pending determination whether the proceeds belonged to the appellants or the bankruptcy estate. *Id*., at 255. On appeal, the court held this question could only be resolved by determining when the causes of action accrued under Texas law. *Id*., at 257–58. Applying Texas law, the court held accrual means the right to institute and maintain suit, and held accrual occurs whenever facts have come into existence that allow one person to sue another for injury. *Id*., at 260 (*citing Apex Towing Co. v. Tolin*, 41 S.W.3d 118 (Tex. 2001)). The appellants argued the necessary injury occurred only after conversion, when their assets were liquidated. *Id*. The Chapter 7 trustee acknowledged the appellants were injured by the liquidation and conversion, but contended the estate was injured by the attorney's

7

misconduct prior to conversion, thus the legal injury accrued pre-conversion. *Id*.

The court focused its analysis on whether the allegations in the appellants' petition injured the estate in a way that would have enabled the Chapter 7 trustee to file the lawsuit prior to conversion. *Cantu*, 784 F.3d at 261. The appellants had sued their attorney, in part, for filing a plan of reorganization that could not be confirmed under the bankruptcy code and for failing to timely request permission to use cash collateral. *Id*., at 261. They also emphasized that one of the grounds cited by the lower court for involuntary conversion had been their unauthorized use of cash collateral. *Id*. Appellants argued that had the request to use cash collateral been timely made, the conversion would not have occurred, and had the conversion not occurred the estate would not have been harmed. *Id*. In rejecting this argument, the Fifth Circuit held there was a more direct consequence of operating without a cash-collateral order: the use of cash for expenses depleted the assets that could have otherwise been used to pay creditors. *Id*. The transfer of assets away from the estate also made it more difficult to confirm a reorganization plan because confirmation requires a sufficient corpus of cash to make necessary plan payments. *Id*. Finally, the failure to timely file a confirmable plan of reorganization also harmed the estate prior to conversion because the delay and associated fees and expenses, as well as the time spent in bankruptcy itself, diminished the value available to creditors. *Id*., at 262. The court concluded that these issues, as alleged by the appellants, resulted in numerous injuries to the creditor body during the pendency of the Chapter 11 case, and therefore the causes of action accrued prior to conversion and belonged to the estate. *Id*., at 263.

### *Analysis*

The issue here of course is the same as in *Cantu*—When could the causes of action alleged

in Bustamante's petition have been brought against the Law Firm? If the allegations would have resulted in legal injury to the estate before conversion to Chapter 7, the case belongs to the estate and the Trustee is the only party with standing to sue the Law Firm. *Apex Towing Co.*, 41 S.W.3d at 120; *Crane*, 295 S.W.3d at 5. If no legal injury occurred until after the case was converted, then the claims belong to Carlube. 11 U.S.C.A. § 541(a)(1).

In his live pleadings, Bustamante asserted the Law Firm failed to timely extend the deadline on the cash collateral order and allowed it to expire, which resulted in a creditor moving to lift the bankruptcy stay. He also asserted the Law Firm never filed a plan of reorganization during the seven-month period between the filing of the Chapter 11 case and the involuntary conversion to Chapter 7. In his brief, Bustamante cites only the general rules that a cause of action must be property of the debtor at the time of filing for bankruptcy to become property of the estate and that accrual occurs when a person has the right to institute and maintain suit and, citing these principles, asserts no right to sue existed until the conversion. But this ignores that the Law Firm's alleged failure to timely file a request for use of cash collateral was a legal harm to the estate because Carlube's use of cash without the order depleted the assets of the estate that otherwise might have been used to pay creditors. *Cantu*, 784 F.3d at 261. The paying of expenses also transferred assets away from the estate, making it more difficult to confirm a plan of reorganization. *Id*. Further, the alleged failure of the Law Firm to file a reorganization plan for seven months would also have been a legal injury because of the delay, fees and expenses, and the added time Carlube spent in bankruptcy itself. *Id*., at 262. Based on Bustamante's pleadings, sufficient legal injury had occurred pre-conversion to allow the Trustee to file suit against the Law Firm. Accordingly, the cause of action accrued pre-conversion and was property of the bankruptcy estate, therefore

9

giving the Trustee exclusive standing to assert the claims.   11 U.S.C.A. § 541(a)(1); *Croft*, 737 F.3d at 375.

Bustamante contends any harm could have been remedied by his attorneys if they had corrected their mistakes because the case could have progressed into reorganization and thus any harm was correctable until the point conversion.   Because any pre-conversion injury was correctable, Bustamante postulates the malpractice claim did not accrue until the point of no return when the case was converted to Chapter 7.   The appellants in *Cantu* raised the same argument, urging that even if the estate had been injured by using cash collateral without an order and by failing to file a confirmable plan, the errors could have all been corrected by filing a proper plan. *Cantu*, 784 F.3d at 262.   In rejecting this argument, the court pointed out the basic rule that a claim accrues when an injury occurs and that the injury does not need to be irrevocable.   *Id*., at 263.   As in *Cantu*, the mere possibility that the Law Firm could have minimized the harm to the estate by taking remedial steps does not undermine our conclusion that the bankruptcy estate suffered sufficient pre-conversion injury to permit a lawsuit.   *Id*.   Accordingly, because the claims accrued pre-conversion, the claims were property of the bankruptcy estate and the Trustee had exclusive standing to bring the claims.   Because standing is a component of subject matter jurisdiction, the trial court did not err in concluding Bustamante's lack of standing deprived it of jurisdiction.   *Vee Bar, Ltd.*, 361 S.W.3d at 131.   Bustamante's first issue is overruled.

## Disclosure and Abandonment of Assets

In his second issue, Bustamante contends that even if the malpractice claim belonged to the bankruptcy estate, the claim was disclosed and abandoned, thus revesting the claim in Carlube. He argues that because his intent to sue the Law Firm was orally disclosed during the show-cause

10

hearing, the Chapter 7 Trustee was on notice of the claim and his subsequent report of no distribution and the closing of the case constituted an abandonment of the claim.

***Applicable Law***

In the bankruptcy context, "abandonment" is a term of art with special meaning. *Catalano v. C.I.R.*, 279 F.3d 682, 685 (9th Cir. 2002). Abandonment is the formal relinquishment of the property at issue from the bankruptcy estate, and upon abandonment the debtor's interest in the property is restored to the debtor. *Id.* The Bankruptcy Code provides for two types of abandonment of property. *In re DeGroot*, 484 B.R. 311, 318–19 (6th Cir. 2012). The first is specific or intentional abandonment, whereby a trustee or debtor in possession may provide notice of an intent to abandon property if the property "is burdensome to the estate" or "of inconsequential value and benefit to the estate." *Id.*, at 318 (*quoting* 11 U.S.C. § 554(a)). Intentional abandonment requires notice and a hearing. 11 U.S.C.A. 554(a). The second type of abandonment is referred to as "abandonment by operation of law," whereby property that the debtor schedules and that the trustee has not administered is abandoned to the debtor automatically at the closing of the bankruptcy case unless the court orders otherwise. *DeGroot*, 484 B.R. at 319. Abandonment by operation of law occurs without notice and a hearing. *Id.*, (*citing DeVore v. Marshack (In re DeVore)*, 223 B.R. 193, 197 (9th Cir. BAP 1998)).

A debtor is required to file a schedule of assets and liabilities during the pendency of his bankruptcy. 11 U.S.C.A. § 521(a)(1). Property may only be abandoned by operation of law if the property has been formally scheduled by the debtor. *In re Furlong*, 437 B.R. 712, 718 (Bankr. D. Mass. 2010), *aff'd*, 450 B.R. 263 (D. Mass. 2011), *aff'd*, 660 F.3d 81 (1st Cir. 2011)("[t]he law is abundantly clear that the burden is on the debtors to list the asset and/or amend their schedules,

and that in order for property to be abandoned . . . , the debtor must formally schedule the property pursuant to 11 U.S.C. § 521(1) before the close of the case.")(*quoting Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995)). Unless the court orders otherwise, property not abandoned by either of these two methods remains property of the bankruptcy estate, and the debtor loses all rights to the property. *DeGroot*, 484 B.R. at 319, (*citing* 11 U.S.C.A. 554(d))("§ 554(d) is essentially a 'fail-safe' provision that ensures property which the debtor fails to schedule and which the trustee does not administer remains within the estate."); *see also Vreugdenhill v. Navistar Int'l Transportation Corp.*, 950 F.2d 524, 526 (8th Cir. 1991)(assets not properly scheduled remain property of the bankrupt estate and the debtor loses all rights to enforce it in his own name).

Because property must be scheduled to be abandoned by operation of law, a trustee's mere knowledge of a pending lawsuit is not sufficient for it to be abandoned at the close of the bankruptcy case; it must be properly scheduled. *Desmond*, 70 F.3d at 186 (*citing In re Rothwell*, 159 B.R. 374, 377 (Bankr D. Mass. 1993))(lawsuit that was discussed with trustee at creditors meeting was not abandoned by operation of law—despite trustee stating the case had no value—because the asset was not formally scheduled before the close of the case); *Vreugdenhill*, 950 F.2d at 526 ("It is not enough that the trustee learns of the property through other means; the property must be scheduled pursuant to section 521(1).").

### *Analysis*

Here, Bustamante asserts the malpractice claim against the Law Firm was disclosed orally at the show cause hearing and subsequently abandoned by the closing of the bankruptcy case. Because the claim was not formally scheduled, Bustamante essentially argues for a deemed abandonment, relying exclusively on *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642

(Tex. 2009). That reliance is misplaced. In *Ferguson*, the plaintiffs filed for bankruptcy a few months after filing a personal injury lawsuit. *Id*., at 643. The plaintiffs disclosed the pending lawsuit in their Statement of Financial Affairs but failed to include it on their Schedule of Personal Property. *Id*. The plaintiffs also disclosed the lawsuit at a creditors meeting attended by the bankruptcy trustee, and the trustee subsequently acknowledged the existence of the pending suit in his report to the bankruptcy court and creditors. *Id*. None of the creditors objected to the final bankruptcy plan, which did not include the lawsuit as an asset. *Id*. After the plan was approved, the failure to schedule the lawsuit was called to the plaintiffs' attention and they amended their plan to include its value and agreed to recalculate the amount owed to the creditors. *Id*., at 644. The defendant in the lawsuit moved for summary judgment in state court, claiming the personal injury action was barred by judicial estoppel, which prevents a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding in order to obtain an unfair advantage. *Id*., at 643 (*citing Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008)). The trial court granted the motion and a divided court of appeals affirmed the dismissal. *Id*. In holding the suit was not barred by judicial estoppel, the Court held that even assuming the existence of an inconsistent position, the plaintiffs' amending of their schedule and recalculation of amounts owed to creditors meant they gained no advantage and neither the defendant nor the creditors in the bankruptcy therefore suffered any disadvantage. *Id*., at 644.

Bustamante's argument for assumed abandonment is not supported by the *Ferguson* decision. The plaintiffs in *Ferguson* had directly informed the trustee of the lawsuit's existence and they listed it in their Statement of Financial Affairs, whereas here the potential suit was

announced in court in the presence of the U.S. Trustee, not the Chapter 7 Trustee. *Ferguson*, 295 S.W.3d at 644. Further, the plaintiffs in *Ferguson* ultimately amended their bankruptcy plan to include the lawsuit and its value in their schedules and recalculated the amount owed to creditors. *Id*. Most importantly, however, *Ferguson* did not involve a claim of abandonment and did not address the requirement that assets be scheduled before they can be abandoned by operation of law. The bankruptcy in *Ferguson* was filed and confirmed under Chapter 13 of the Bankruptcy Code. *Ferguson v. Bldg. Materials Corp. of Am.*, 276 S.W.3d 45, 48 (Tex.App.—El Paso 2008), *rev'd*, 295 S.W.3d 642 (Tex. 2009). In a Chapter 13 bankruptcy, the confirmation of the plan revests all property of the bankruptcy estate in the debtor. 11 U.S.C.A. § 1327. Thus, there was no issue with allowing the plaintiffs to pursue their personal injury claim because the claims had revested in the debtors when the plan was confirmed by the bankruptcy court. Here, where the debtor is proceeding under Chapter 7, the property could not revest in the debtor unless the property was scheduled and abandoned. 11 U.S.C.A. § 554(c); *Desmond*, 70 F.3d at 186. Because the malpractice claim against the Law Firm was not scheduled, it could not be abandoned by operation of law. This is so without regard to whether the Trustee knew about the claim. *Vreugdenhill*, 950 F.2d at 526. Accordingly, the closing of Carlube's Chapter 7 bankruptcy case did not revest the malpractice claim in Carlube and the claim remains with the bankruptcy estate. 11 U.S.C.A. 554(d). Bustamante's second issue is overruled.

### Equitable Estoppel

In his third issue, Bustamante contends the Law Firm should be equitably estopped from using a judicial estoppel defense to bar Carlube from suing them for malpractice because it is inequitable for the Law Firm to escape liability through its own failure to list the claim in the

14

schedule of assets after the case was converted to Chapter 7.

*Applicable Law*

Judicial estoppel can be invoked to prevent a party that successfully maintained a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding in order to obtain an unfair advantage. *Cleaver v. Cleaver*, 140 S.W.3d 771, 774-75 (Tex.App.—Tyler 2004, no pet.)(*citing Andrews v. Diamond, Rash, Leslie & Smith*, 959 S.W.2d 646, 649 (Tex.App.—El Paso 1997, writ denied)). It can also be triggered by a party taking a misleading position in a prior legal proceeding, such as a debtor failing to disclose an asset in bankruptcy. *Id.*, (*citing Zipp Indus., Inc. v. Ranger Ins. Co.*, 39 S.W.3d 658, 665 (Tex.App.—Amarillo 2001, no pet.). Equitable estoppel, on the other hand, requires: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998)(*citing Shroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991)). Estoppel is an equitable doctrine, and one seeking equity should come with clean hands. *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex.App.—Fort Worth 2006, pet. denied). However, "[n]o one is ever estopped from asserting lack of subject matter jurisdiction." *Tourneau Houston, Inc. v. Harris County Appraisal Dist.*, 24 S.W.3d 907, 910 (Tex.App.—Houston [1st Dist.] 2000, no pet.). Subject matter jurisdiction cannot be conferred by consent, waiver, or estoppel at any time. *Id.*, (*citing Federal Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943)).

*Analysis*

15

Here, Bustamante contends the Law Firm should be equitably estopped from using a judicial estoppel defense against his claims because the Law Firm should not be allowed to use an equitable defense with unclean hands. He asserts that after having informed them of his intent to sue, the Law Firm intentionally left the lawsuit off of the amended bankruptcy schedules and should not now benefit from their malfeasance. While such an allegation could be relevant in equity, the Law Firm never raised a judicial estoppel defense in its plea to the jurisdiction or motion for summary judgment. Instead, the Law Firm asserted Bustamante lacked standing to assert a claim because the Chapter 7 Trustee had exclusive standing and this fact deprived the trial court of subject matter jurisdiction over Bustamante's claims. As already noted, subject matter jurisdiction cannot be conferred by estoppel, and to the extent Bustamante is arguing the Law Firm should be equitably estopped from raising it, his contention is overruled. *Tourneau Houston, Inc.*, 24 S.W.3d at 910. Alternatively, if Bustamante is requesting we rule the Law Firm is equitably estopped from raising a judicial estoppel defense in the future, his contention is premature. While judicial estoppel could be raised to estop a plaintiff from pursuing a claim he intentionally left off his bankruptcy schedules, the Law Firm did not raise it as a defense. *Cleaver*, 140 S.W.3d at 775. Accordingly, that claim is not ripe for our review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)("The ripeness doctrine conserves judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes."). In either case, Bustamante's third issue is overruled.

### Representative or Derivative Standing

In his final issue, Bustamante contends he has standing to sue the Law Firm either as a representative of Carlube or individually on his own behalf under Section 21.563 of the Texas

16

Business Organizations Code. Because we have already determined the Chapter 7 Trustee has exclusive standing to bring the malpractice claim against the Law Firm, we need not address Bustamante's contentions that he has representative or derivative standing. *See* TEX.R.APP.P. 47.1. Issue Four is overruled.

## CONCLUSION

Having found no reversible error, the judgment of the trial court is affirmed.

February 28, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)